# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE ARREST OF

DALTON CULLEN

Case No. 3:21-mj-00232-DMS

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A CRIMINAL COMPLAINT

I, Thomas J. King, being duly sworn, depose and state that:

### I.     EXPERIENCE OF AFFIANT

I am a graduate of Buffalo State College, where I obtained a Bachelor of Science in criminal justice. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice, and have been so employed since February 14, 2001. Prior to that, I was a Special Agent with the Immigration and Naturalization Service for five years and an Inspector with the United States Customs Service for three years.

I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. As a result of my training and experience as an ATF Special Agent, I am familiar with the federal firearms laws. Through my experience, I have also investigated numerous cases involving 18 USC section 922(g)(1), Felon in Possession of a Firearm, 18 USC § 924(c), Using or Carrying a Firearm in Relation to a Crime Involving Drug Trafficking or Possession of a

APR 1 9 2021

Firearm in Furtherance of a Drug Trafficking Crime, and 21 USC §§ 841 et seq., Controlled Substance violations.

## II. PURPOSE OF AFFIDAVIT

Based on the facts set forth in this affidavit, there is probable cause to believe that Dalton CULLEN has committed violations of the Controlled Substances Act, 21 USC Section 841 et seq., Title 18 USC Section 922(g)(1), Felon in possession of a firearm, and Title 18 USC 924(c), Use of a Firearm in Furtherance of a Violent Crime or Distribution of Controlled Substances.

## III. PROBABLE CAUSE

1. I initiated an investigation into Dalton CULLEN on January 11, 2021. I met Dalton CULLEN while acting as an Undercover Agent (UCA) and began purchasing narcotics from CULLEN.

2. On January 27, 2021, I made arrangements to purchase two ounces of methamphetamine. CULLEN indicated that he had one ounce on his person but needed his source of supply to meet him so he could have a total of two ounces. I agreed to meet CULLEN later that day and purchase the two ounces of methamphetamine from him.

3. When I met CULLEN, he sold me one ounce of methamphetamine. CULLEN said that he could sell me the other ounce once his source arrived with more methamphetamine. While we waited for CULLEN's source to arrive, CULLEN showed me a Trailblazer Firearms, model Lifecard, .22 WMR caliber single shot pistol. CULLEN would not sell the firearm and indicated he kept it on

his person and did not want to get rid of it. CULLEN received a text and indicated that his source had arrived. Before CULLEN left my vehicle to go meet his source, he left the firearm with me to look at. I was able to photograph the firearm, verify the serial number, and verify that in fact there was live ammunition with the firearm.

4. I have discussed this firearm with ATF Agents who are Interstate Nexus experts, who have confirmed the firearm was not made in the state of Alaska, and has travelled in Interstate Commerce.

5. Meanwhile, ATF surveillance had observed a GMC pickup truck bearing AK LP GZB432 had arrived, and parked near where I was parked, waiting with CULLEN. When CULLEN told me his source had arrived, surveillance observed CULLEN walk from my vehicle, to the GMC pickup, and get in. After several minutes CULLEN returned to my vehicle, secured his firearm, and then proceeded to sell me a second ounce of methamphetamine. The entire encounter with CULLEN was audio and video recorded, and monitored by the ATF surveillance team. I departed the area after the transaction was complete. I later field tested both packages of the suspected methamphetamine I had purchased from CULLEN, and obtained a presumptive positive result for methamphetamine.

6. ATF Agents observed that after CULLEN exited my vehicle, he returned to the GMC pickup. After a few moments, CULLEN exited the vehicle and departed the area. ATF surveillance continued on the vehicle, which eventually stopped at an address that ATF Investigative Assistant Bill Tunilla was

able to link to Delshawn WREN, through relatives. ATF Agents who observed the driver believed at that time the driver was Delshawn WREN, but the man was not followed further and it was never confirmed definitively the person was WREN.

7. On April 16, 2021, I made arrangements with CULLEN to purchase three ounces of methamphetamine and two ounces of heroin. Through texts, CULLEN told me that he had the three ounces of methamphetamine ready for me, but would need to meet his "guy" with the money I would pay him for the methamphetamine, to get the heroin I wanted to purchase. I agreed to meet CULLEN later that day in the parking lot of the Clarion Suites Hotel, 1110 W. Eighth Avenue.

8. That evening I met CULLEN in the parking lot of the Clarion Suites Hotel. CULLEN entered my vehicle and sold me three ounces of methamphetamine for $1,800. I paid CULLEN with pre-recorded ATF funds. CULLEN confirmed that his heroin source would meet him sometime soon, in the same parking lot, and CULLEN would then have heroin available so he could sell me the two ounces (approximately) we had agreed on.

9. I waited in my vehicle while CULLEN worked on his car and spent some time in his hotel room. CULLEN kept me updated with the status of his heroin source's arrival. Eventually CULLEN got back in my car, and told me his heroin source was going to arrive soon. I observed a Jeep Grand Cherokee bearing AK LP KEP458 (determined to be a rental vehicle) enter the parking lot

and as it drove in the parking lot CULLEN, who was looking at his phone, said to the effect that was the guy he had been waiting for. CULLEN took an incoming call on speaker and I heard the voice on the line instruct CULLEN to get in the passenger side back seat "behind me". CULLEN exited my vehicle and then got in the back seat of the Jeep as directed. The Jeep then drove by me and I observed the driver was a male, later identified as Stacy GODFREY.

10. I observed that the Jeep drove around the parking lot, out the exit, and parked on the street behind me. Shortly after that CULLEN exited the Jeep, walked to my vehicle, and got back in. CULLEN produced two ounces of heroin that I observed was a very light brown color and had a powdery texture. CULLEN assured me that it was very high quality. I attempted to weigh the heroin, but my digital scale didn't work. CULLEN assured me the weight was correct and if we determined it wasn't, he would make it right, because he had also just obtained a large amount of heroin from his source. He removed a bag from his pocket and showed me a sandwich bag that appeared to contain at least 3-4 ounces of the same type of heroin. I then paid CULLEN $3400 in ATF pre-recorded funds, for the two ounces of heroin. CULLEN exited my vehicle, and I departed the area.

11. ATF Agents on surveillance observed that CULLEN went back to the Jeep, got in the vehicle, and a few moments later exited the vehicle. After the Jeep left the area DEA Agents assisted by APD attempted to follow it but were unsuccessful.

APR 1 9 2021

3:21-mj-00232-DMS    5

Case 3:21-mj-00232-DMS    Document 1-1    Filed 04/19/21    Page 5 of 6

12. Agents conducting surveillance on CULLEN observed that he walked to his parked car and got inside. Agents then contacted CULLEN and placed him under arrest. They seized the heroin from CULLEN's pocket I had observed earlier.

13. I later tested the two substances I had purchased from CULLEN that day. I obtained a positive result for methamphetamine and a positive result for heroin for the respective packages of methamphetamine and heroin I had purchased from CULLEN.

14. Dalton CULLEN is currently on probation for a felony conviction and I confirmed with State of Alaska Probation Officer Maria Wallace that CULLEN knows he is prohibited from possessing a firearm. I also confirmed with Officer Wallace that the person that was arrested on April 16, 2021, is the same person currently under her supervision.

_____
Thomas J. King
**Special Agent**
**BUREAU OF ALCOHOL, TOBACCO FIREARMS AND EXPLOSIVES**

SUBSCRIBED AND SWORN TO ~~before me this~~ telephonically 19 day of April, 2021, at Anchorage, Alaska.

_____
Deborah M. Smith
**United States Magistrate Judge**